Matter of Emily GG. v India HH.

2026 NY Slip Op 02181

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Emily GG., Respondent,

v

India HH., Respondent, and Travis II., Appellant.

Decided and Entered:April 9, 2026

CV-24-1691

Calendar Date: February 9, 2026

Before: Clark, J.P., Reynolds Fitzgerald, Ceresia, Powers And Corcoran, JJ.

Amanda FiggsGanter, Albany, for appellant.

Lisa K. Miller, McGraw, for India HH., respondent.

Cambareri & Brenneck, Syracuse (Melissa K. Swartz of counsel), for Emily GG., respondent.

Natalie B. Miner, Homer, attorney for the child.

[*1]

Corcoran, J.

Appeal from an order of the Family Court of Madison County (Rhonda Youngs, J.), entered September 27, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.

The subject child was born in 2018 to respondent Travis II. (hereinafter the father) and respondent India HH. (hereinafter the mother). A lengthy pattern of violent and threatening acts by the father toward the mother culminated in March 2023, when the father attempted to harm himself in the family residence while the child was present. After the mother intervened, the father struck her and left the residence. The father was located by police in a nearby parking lot, where, according to the officers, he kicked, bit and threatened them. The father was later hospitalized for psychiatric evaluation. Upon his release, he directed the mother and the child to leave the home, relegating them temporarily to a shelter. As the mother attempted to secure stable housing — petitioner (hereinafter the cousin) — began caring for the child and, with the mother's consent, she assumed primary caregiving responsibilities. In May 2023, the cousin commenced this third-party custody proceeding, alleging extraordinary circumstances. Following a fact-finding hearing, Family Court determined that extraordinary circumstances existed, awarded the cousin sole legal and physical custody of the child and granted the father four hours of biweekly parenting time. The father appeals, contending that Family Court deprived him of a fair trial through a series of evidentiary errors and that the limitation on his parenting time lacks a sound and substantial basis in the record.FN1 We disagree and affirm.

Initially, the father contends that Family Court erred in admitting certified police records. The father does not dispute that the records were produced in response to a judicial subpoena and accompanied by a business records certification. Rather, he argues that the lack of testimony from a police department employee rendered the records inadmissible. Records produced in response to a judicial subpoena are admissible when accompanied by a certification pursuant to CPLR 3122-a stating that the records were made in the regular course of business, at or near the time of the events recorded, and that it was the regular course of business to make such records (see Matter of Cherokee C. [Matthew C.], 173 AD3d 1573, 1574 [3d Dept 2019]; Oropallo v Bank of Am. Home Loans, LP, 162 AD3d 1420, 1423 [3d Dept 2018]). Because those foundational requirements were satisfied here, the records were admissible as certified business records under CPLR 4518 (a), and testimony from a records custodian or other employee was not required to establish authenticity (see Matter of Cherokee C. [Matthew C.], 173 AD3d at 1574; compare Matter of Aiden XX. [Jesse XX.], 104 AD3d 1094, 1096 [3d Dept 2013]).

Having determined that the proponent established that the police reports constituted [*2]admissible business records, we next address the father's argument that certain statements contained therein were nonetheless inadmissible. Among the police records received in evidence were incident reports prepared in response to an allegation of family violence, as required by CPL 140.10 (5). That statute requires the responding officer to prepare and file a written report of the incident. Accordingly, the officers were under a statutory duty, in the regular course of police business, to memorialize their observations, actions and the circumstances encountered. To the extent the reports reflect the responding officer's own observations and conduct, those entries were made pursuant to that duty and are admissible as part of the business record itself (see CPLR 4518 [a]; see generally People v Patterson, 28 NY3d 544, 550-551 [2016]). In addition, the father's recorded statements to police were admissible as admissions against interest of a party (see Matter of M.G. [Marquise G.], 234 AD3d 575, 576 [1st Dept 2025]; Matter of Amara C. [Wanda C.], 206 AD3d 424, 424-425 [1st Dept 2022]; People v Finch, 160 AD3d 1212, 1214 [3d Dept 2018]). To the extent the reports contained statements attributable to the mother, who was not under a business duty to report (see Matter of Leon RR., 48 NY2d 117, 122-123 [1979]), any error in their admission was harmless, as those same facts were established through both the mother's testimony and the father's admissions, such that properly admitted testimony amply supports Family Court's determination (see Matter of Zaiden P. [Ashley Q.], 211 AD3d 1348, 1355 n 5 [3d Dept 2022], lv denied 39 NY3d 911 [2023]; Matter of Carmela H. [Danielle F.], 185 AD3d 1460, 1461 [4th Dept 2020], lv denied 35 NY3d 915 [2020]; Matter of Nicholas R. [Jason S.], 82 AD3d 1526, 1528 n [3d Dept 2011], lv denied 17 NY3d 706 [2011]; compare Matter of Imani O. [Marcus O.], 91 AD3d 466, 467 [1st Dept 2012]).

The father's argument that he was denied a fair hearing when Family Court advised him, on the first day of the hearing, that it was too late to file a custody petition is without merit. Contrary to his assertions, the record reflects that the father was not precluded from filing a custody petition, but was advised only that he could not forestall the hearing by doing so. The record establishes that the cousin's third-party custody petition had been pending for approximately one year by the time of the hearing, during which the father, represented by counsel, actively litigated the matter and never sought affirmative custodial relief nor amended his pleadings. Trial courts "must have broad discretion in controlling their calendars and the progress of a trial" (Matter of Angelica CC. v Ronald DD., 214 AD3d 1091, 1096 [3d Dept 2023], lv denied 39 NY3d 915 [2023]). Under these circumstances, Family Court's refusal to entertain a new custody petition immediately before the hearing constituted a proper exercise of its authority to manage the proceedings[*3].

The father's contention that Family Court erred in admitting uncorroborated hearsay evidence that he touched the child inappropriately is unpreserved because he failed to object to these statements in the fact-finding hearing (see Matter ofTibor I. [Tibor H.], 239 AD3d 1074, 1076 n 2 [3d Dept 2025]).

We likewise reject the father's contention that Family Court improperly limited his recross-examination of the mother. The father was afforded a full and fair opportunity to cross-examine the mother, and he failed to identify any new matter elicited on redirect that would have entitled him to further questioning (see Suchow v Suchow, 200 AD3d 1359, 1361 [3d Dept 2021]; Vickie F. v Joseph G., 195 AD3d 1064, 1066 [3d Dept 2021]).

Finally, Family Court's determination of the father's parenting time is guided by the child's best interests and is entitled to deference where, as here, it is supported by a sound and substantial basis in the record (see Matter of Gary JJ. v Barbara KK., 244 AD3d 1620, 1622 [3d Dept 2025]; Matter of Sherab X. v Michelle Y., 244 AD3d 1532, 1533 [3d Dept 2025]). In assessing the child's best interests, Family Court was required to consider, among other factors, the quality of the respective home environments, the child's need for stability, each party's past performance and relative fitness and each party's ability to provide for the child's emotional and developmental well-being (see Benjamin V. v Shantika W., 207 AD3d 1017, 1018-1019 [3d Dept 2022]).

The fact-finding hearing established that the child had directly observed numerous instances of the father's violent conduct toward the mother, including incidents in which he threatened the mother with a knife to her throat and prompted police to respond to the residence. During those frightening incidents, the child cried and attempted to hide when the father's behavior escalated. Family Court appropriately credited that evidence in concluding that the child associated the father with those distressing events and that her contact with him coincided with increased emotional dysregulation, including difficulty with transitions and decreased focus at school. Family Court also properly found that the child thrived in the cousin's care. At the time of the hearing, the cousin and the child resided in an apartment, but the cousin was moving into her parents' home to better meet the child's needs. The cousin explained that the move would afford the child her own bedroom and dedicated play space, access to outdoor areas and daily support from her own parents, who had become like grandparents to the child. The cousin further testified that she maintained stable, full-time employment that allowed her the flexibility to work remotely or take time off to attend to the child's educational and therapeutic needs. To the father's credit, he attended nearly all scheduled parenting time visits; however, he did not initiate contact to arrange those visits and provided no financial support for [*4]the child. Given the father's conduct, the effects of domestic violence on the child, and the stability provided in the cousin's care, Family Court's parenting-time determination is supported by a sound and substantial basis in the record and we decline to disturb it (see Matter of Mackenzie OO. v Ian NN., 242 AD3d 1345, 1350 [3d Dept 2025]; Matter of Gabrielle Q. v James R., 233 AD3d 1407, 1409-1410 [3d Dept 2024]; Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1394-1395 [3d Dept 2024]).FN2

Clark, J.P., Reynolds Fitzgerald, Ceresia and Powers, JJ., concur.

ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Although the father challenges the limitation imposed on his parenting time, he does not otherwise contest Family Court's determination awarding custody of the subject child to the cousin; any challenge to that determination is therefore abandoned (see Matter of Jaime T. v Ryan U., 238 AD3d 1257, 1259 n 2 [3d Dept 2025]).

Footnote 2: Although not dispositive, we note that the attorney for the child supports Family Court's determination.